**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

FEB - 8 2021

| | |
|---|---|
| Erik B. Cherdak<br>149 Thurgood Street<br>Gaithersburg, Maryland 20878<br>202.330.1994<br>ebcherdak@gmail.com<br><br>*Plaintiff,*<br><br>v.<br><br>Liam O'Grady<br>U.S. District Judge<br>For the Eastern District of Virginia<br>Alexandria Division<br>Chambers of the Hon. Liam O'Grady<br>401 Courthouse Square<br>Alexandria, Virginia 22314<br>(In his personal and individual capacity)<br><br>*Defendant.* | Case No. 1:21 CV 141 RDA /TCB<br><br>Judge Assigned: RDA / TCB<br><br>Related Cases:<br><br>1:16-cv-112-LO/jfa<br><br>As consolidated with:<br><br>1:17-cv-500-LO/jfa<br><br>TRIAL BY JURY REQUESTED |

## COMPLAINT

In and for Plaintiff's COMPLAINT against the above-named Defendant in his personal and individual capacity and pleads as follows:

### THE PARTIES

1.    Plaintiff Erik B. Cherdak is a citizen of the State of Maryland residing at the address and having the contact information set out in the caption of this COMPLAINT.

2.    On good and reliable information, Judge Liam O'Grady is a Senior U.S. District Court in the U.S. District Court for the Eastern District of Virginia sitting in the Alexandria Division of this Court and who is believed to live in the Commonwealth of Virginia. Plaintiff did not include Judge O'Grady's residential address to ensure non-public disclosure of the same; should the court

require that address to be placed in the public record by the Plaintiff, the Plaintiff will so comply. Judge O'Grady regularly presides over cases in the Alexandria Division of the U.S. States District Court for the Eastern District of Virginia. It is also believed that, on good and reliable information, that Judge O'Grady serves as a U.S. District Judge on the U.S. UNITED STATES FOREIGN INTELLIGENCE SURVEILLANCE COURT in Washington, DC. This case is particularly important given Judge O'Grady's two positions in this and in the U.S. FISA Courts. Judge O'Grady is called upon to review highly sensitive evidence and warrant applications concerning personal and national security issues. Accordingly, Plaintiff reserves the right to seek removal of this action to the U.S. District Court for the District of Columbia which may accept jurisdiction on the bases set forth *infra*. Plaintiff posits, in an abundance of caution and to avoid any additional proceedings related to motions to recuse due to conflicts or otherwise, that Judge O'Grady should not engage in any communications concerning or relating to this case with any other district or magistrate judge of this Court.

## JURISDICTION AND VENUE

3.      Jurisdiction in this Court is proper under notions of diversity jurisdiction under 28 U.S.C. § 1332. The parties are geographically diverse and the amount in controversy and/or the value of the harms caused by Judge O'Grady that continue to threaten Plaintiff far exceed $75,000.00 and any other amount in controversy requirements.

4.      Jurisdiction also is proper under 28 U.S.C. § 1331 as there are federal questions contemplated under codes and statutes pertaining to Judge O'Grady's ability to preside over certain proceedings that are to be adjudicated under controlling federal law and precedent notwithstanding the existence of any state-based persuasive authority that may be relevant. Such federal codes and statutes include, but are not limited to, the Code of Judicial Conduct for U.S. Judges (March 2019),

28 USC § 455, etc. under which federal questions are raised relating to strictures and standards further calling on application of federal common law principles such as whether certain facts demonstrated by documented, clear and convincing evidence gives rise to reasonable questions as

• to Judge O'Grady's impartiality (or lack thereof). *See e.g.,* Canon 3(C)(1) of the Code of Judicial Conduct for U.S. Judges ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned..."); *see also,* 28 USC § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."). The real facts and circumstances contemplated demonstrated by documented communications sent unsolicited from an officer of this Court to the Plaintiff absolutely present a clear-cut situation in which Judge O'Grady's impartiality might (and properly is) questioned.   *Id.*   Documented clear and convincing evidence demonstrates conclusively that Judge O'Grady's conduct and handling of matters is outside the bounds of all jurisdictional predicate and, as such, is not judicial action normally encountered during the discourses of federal court litigation and the type of conduct carried out in any judicial capacity. In *Stump v. Sparkman,* 435 U.S. 349 (1978), the U.S. Supreme Court held "that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity..." Here, documented facts and circumstances clearly and unequivocally show that Judge O'Grady engaged in and permitted conduct to occur including, but not limited to, taking part in the substantive review of substantive motions and proposed court orders seeking relief in the form of establishing fictional stories directly contradicting clear and convincing evidence in the record, namely fictional stories and factual assertions to attempt to negate actual and apparent impropriety borne from numerous

instances of improper *ex parte* communications concerning material facts related to disposition of claims and defenses in prior litigation, creation of evidence and the insisted making out an affidavit by Judge O'Grady showing both bias and extreme and prejudicial antagonism toward and against the Plaintiff, and the improper use of the prestige of Judge O'Grady's name and position to advance the private interests of an officer of this Court—to name a few (more discussed in the FACT set forth herein). Despite the existence of clear and convincing evidence already in the public record (e.g., texts and emails admittedly authored by an officer of this Court), Judge O'Grady facilitated the fueling of a dispute as to material facts concerning his own conduct when he wrote: "The Court is confident that Mr. Grimm's filing will contain germane facts that offer important additional context with  respect to the underlying theories that Mr. Cherdak asserts." See Case No. 1:16-cv-112 at Dkt. 498 at 2. Such confidence on the part of Judge O'Grady as to the existence of "germane facts" offering "important additional context" despite the existence of clear and convincing evidence already in the public record in that 112-case was a call for Attorney Grimm to proffer other evidence that contradicted very disturbing and already established facts in the record. And, in the midst of evaluating those facts, Judge O'Grady permitted his chambers to act as a sort of legal aid clinic to assist Attorney Grimm in the substantive preparation of two motions and corresponding proposed orders seeking to establish a "new" alternative set of facts through orders that would be installed by Judge O'Grady—orders that will serve to negate both actual and apparent improprieties borne from misconduct that finds no jurisdictional predicate of any kind under any law, that stripped Plaintiff of his due process rights to a fair and impartial tribunal and decision-maker, and that worked manifest injustices that cannot be tolerated in the judiciary. With no imposition of injunctive relief, Judge O'Grady will continue to ignore clear and convincing evidence mandating significant relief here and in the aforementioned 112-case.

-4-

5.      Venue is proper as where the wrongs and harms complained of occurred in this Court.

## FACTS

6.      Plaintiff's COMPLAINT seeks redress for manifest injustices, violations of rights of due process and equal protection under law, and for the harms proximately caused by Judge O'Grady acting *ultra vires* at least wantonly and recklessly and, more likely, intentionally relative to any jurisdictional predicate in the above-referenced "Related Cases" (hereinafter the "112-case"). *Shockingly*, in the midst of inquiries regarding documented misconduct of Judge O'Grady properly and timely brought to this Court's attention by Plaintiff in a meritorious motion urged under Fed. R. Civ. P. Rule 60(b)(6), *see* 112-case at Dkt. 476, and based *inter alia* on clear, convincing and documented evidence of improper *ex parte* communications, documented *ex parte* communications concerning the creation of evidence and an affidavit made out by Judge O'Grady concerning his biased views toward Plaintiff and his credibility (made material by Judge O'Grady in the 112-case), and the permitted yet clearly wrongful use of the prestige of Judge O'Grady's name, office and position by others in pursing their private claims and criminal complaints against Plaintiff, Judge O'Grady recently and again permitted an officer of this Court (Attorney Bernard S. Grimm) to get away with additional improper *ex parte* (bi-directional) communications with Judge O'Grady's Judicial Assistant and long-time Personal Law Secretary, Ms. Diane Wood in relation to substantively helping Attorney Grimm prepare substantive motions and corresponding proposed court orders seeking affirmative relief by way of one or more orders to be installed by Judge O'Grady. In such improper *ex parte* communications between Attorney Grimm and Ms. Wood, Attorney Grimm submitted two draft motions along with draft proposed orders to Ms. Wood for her substantive review of the entirety of those motions as she had been "walking" Attorney Grimm through the substantive motion preparation process as documented by Attorney

-5-

Grimm. *See* 112-case Dkt. 507-1 (Attorney Grimm expressing his appreciation to Ms. Wood for providing her substantive assistance to Attorney Grimm and his staff members to substantively draft his two substantive motions and proposed orders seeking to establish a "consistent" (yet contradictory) O'Grady-Grimm storyline related to clear instances of canonically prohibited misconduct brought to light in documented communications authored and sent by Attorney Grimm concerning *inter alia* disputed facts regarding Judge O'Grady's conduct *inter alia* relating to Attorney Grimm's written representations of the making out of an affidavit by Judge O'Grady to be used by Attorney Grimm to pursue claims and criminal charges against Plaintiff, the assistance with a criminal investigation threatened against Plaintiff by Attorney Grimm, wrongful yet permitted use of the prestige of Judge O'Grady's office and position, numerous extrajudicial and improper *ex parte* communications concerning material and disputed facts in the 112-case, and the *de facto* permission of ex parte access to Chambers to advantage Grimm and Judge O'Grady while clearly "fixing" judicial misconduct stories to go against Plaintiff and the hard, clear and convincing evidence of such misconduct that Plaintiff merely brought to light in the 112-case in accordance with Plaintiff's ethical obligations to report the same). *See* 112-case Dkt. 490-1 ("I [Attorney Grimm] went through the Head of the Clerks Office to get an affidavit not only [from] O Grady, but [also from] past lawyers you have failed to pay."); *see* 112-case Dkt. 477-1 at pg. 1 (Attorney Grimm writing: "It was difficult but Judge O Grady is willing to write a letter and cooperate with the criminal investigation [against Mr. Cherdak]."); *see* 112-case Dkt. 477-1 at pg. 2 (Attorney Grimm writing: "I also obtained Judge Liam I Grady's comments about your credibility.") (spelling errors in original); *see* D.E. 491-1 (Attorney Grimm writing: "IF I DON'T HERE FROM YOU I WILL SEND IT [Judge O'Grady's affidavit] TO THE VIRGINA BAR ,111 EAST MANI STREET RICHMOND VIRGINIA AND YOUR EMPLOYER, ALONG WITH

-6-

JUDGE O GRADYS. COMMENTS.") (emphasis in original); *see* 112-case Dkt. 502 at Exhibit EBC-OBJ-3 ("WHAT I HAVE IN MY POSSESSION WILL HOPEFULLY PREVENT YOU FROM MAKING A LIVING... I hope to god we don't run into each other."); *see* 112-case Dkt. 507-1 (Attorney Grimm writing to describe his bi-directional improper *ex parte* communications with Judge O'Grady's Judicial Assistant and long-time Personal Law Secretary, Ms. Diane Wood, after sending her two draft motions and two corresponding proposed court orders for her substantive review and comment and stating: "Now if I have misunderstood you, I know fully that it's not your job to file counsels motions, so if I'm wrong or *[if] I screwed up the motion[s] please let me know. I understand this is my responsibility and you have been walking myself and my staff, or former staff through this which I appreciate.*"). [1], [2]   Plaintiff incorpates the entirety of those cited and referenced documents in the public record as they were restated herein verbatim.

_____

[1] Judge O'Grady's in ability to be impartial and to act without out bias and extreme antagonism is also demonstrated by the unequal treatment he manifests toward litigants that come before him. *See Downing v. Lee*, Civil No. 1:16-cv-1511 (E.D. Va. July 18, 2017). In *Downing*, Judge O'Grady addressed a situation in which an applicant for an administrative law position in the USTPO was treated by Judge O'Grady as a *pro se* litigant, while in in the 112-case, Judge O'Grady sought to punish Plaintiff by holding him to a higher, unequal standard under the law by refusing Plaintiff any predicates of acting as a *pro se* litigant and proceeding to strike papers properly formatted in accordance with the Court's rules, to not consider arguments and controlling law brought to Judge O'Grady's attention and otherwise. *Tellingly*, in one of his Orders, *see* 112-case Dkt. 511 at pg. 3 Judge O'Grady wrote: "Cherdak, a pro se litigant, undoubtedly maintains a subjective belief that the Court's impartiality "might reasonably be questions" based on the administrative assistant's apparent willingness to clarify the processes by which a non-party can file and label an amicus brief." *But see and compare* 112-case Dkt. 350 at pg. 2 (Judge O'Grady writing: *Accordingly*, the Court finds that Cherdak is not entitled to the consideration normally afforded to *pro se* parties who lack familiarity with the law, the court system, and its policies and procedures."). Regardless of Plaintiff's subjective beliefs, the objective, clear and convincing evidence of Judge O'Grady's misconduct speaks clearly for itself—with no spin required. See, for example, 112-case Dkt. 491-1 (Attorney Grimm writing: "I went through the Head of the Clerks Office to get an affidavit not only [from] O Grady, but [also from] past lawyers you have failed to pay."). To date, and while they now dispute those facts admittedly written by Attorney Grimm, there has been no evidence presented in the 112-case to negate clear and convincing evidence demonstrating no less than an appearance of impropriety that misconduct did in fact occur in the 112-case (e.g., there is an asserted representation in an admittedly authored and sent email that Judge O'Grady made out an affidavit concerning allegations of fact material to the 112-case and to be used against Mr. Cherdak in pursuit of Attorney Grimm's private claims and urgings for criminal charges and investigations against Mr. Cherdak).

[2] The motions that Attorney Grimm sent to Ms. Wood in Judge O'Grady's chambers on January 2, 2021, included argument and factual allegations related to Judge O'Grady's biased views toward Plaintiff and his credibility. *See* 112-case 507-1 (including attached pre-filing drafts of Attorney Grimm's motions ultimately perfected and filed three days later on January 5, 2021 at 112-case Dkt. Nos. 505 and 506).

7.    When Judge O'Grady was presented with clear and convincing evidence of his misconduct, Judge O'Grady completely ignored that evidence and *de facto* admitted to his failure to review and deliberately consider evidence properly brought before Judge O'Grady while Judge O'Grady further resorted to insults hurled against Plaintiff clearly demonstrating negative bias and extreme antagonism toward and against the Plaintiff in the 112-case. *See* 112-case Dkt. 478 at 1 (Judge O'Grady falsely stating: "The text message is not included but is described by Mr. Cherdak."); *but see and compare*, 112-case Dkt. 477-1 (Plaintiff filing two text messages (quoted *supra*) originally authored and sent unsolicited by Attorney Grimm to Mr. Cherdak as Apple® iMessage-based text messages as late as August 28, 2020 at 2:11am). It is disturbing that Judge O'Grady accused Plaintiff of engaging in "sophistry" when Judge O'Grady failed to read the papers filed by Plaintiff found at 112-case Dkt. 477-1. *See* 112-case at Dkt. 478 at 1; *see* 112-case Dkt. 477-1 at 1 (Attorney Grimm writing: "It was difficult but Judge O Grady is willing to write a letter and cooperate with the criminal investigation.") and *id.* at 2 ("I also obtained Judge Liam I Grady's comments about your credibility.") (spelling errors in original); see 112-case Dkt. 478 at 1 (Judge O'Grady writing: "As grounds [for his Rule 60(b)(6) motion], Mr. Cherdak alleges that an attorney, Mr. Grimm, who is evidently attempting to collect a debt owed to him by Mr. Cherdak, authored a text message on August 28, 2020 and stated therein that he had contacted Judge O'Grady about cooperating in a criminal investigation against Mr. Cherdak. The text message is not included but is described by Mr. Cherdak."). Had Judge O'Grady simply examined the docket, he would have seen that Mr. Cherdak did in fact file Attorney Grimm's authored and sent text messages at 112-case Dkt. 477-1 at pgs. 1-2 (originally sent and received as Apple® iMessages).[3]

---

[3] While likely to be brought in the U.S.D.C. for the District of Columbia or in the D.C. Superior Court of general jurisdiction, it is worth noting that Attorney Grimm's conduct to threaten, harass and extort money and other personal property with Judge O'Grady assistance and otherwise, represents actionable conduct for which Judge O'Grady could

8.     Plaintiff properly brought a meritorious motion for relief from judgment under Rule 60(b)(6) and Judge O'Grady shirked his responsibilities to review clear and convincing evidence placed before him because recognizing the validity and integrity of that evidence created nothing less than actual and apparent improprieties borne from clandestine, extrajudicial, improper *ex parte* communications concerning material matters borne from Judge O'Grady's deep seated antagonism and bias toward and against the Plaintiff. *See also, Liteky v. United States,* 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge...They *may* do so if they reveal an opinion that derives from an extrajudicial source; *and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.*") (emphasis supplied); *see also, for example, In the Matter of a Judicial Complaint Under 28 U.S.C. § 351,* Fourth Circuit No. 04-19-90025 (April 3, 2020) (*Slip Op.*) (4th Cir. 2020) (Gregory, C.J.) at *2 ("Misconduct may also be based upon a showing that the judge's rulings were motivated by bias or other improper motive, but the claim must be supported by sufficient evidence to raise an inference that misconduct has occurred and cannot be based on mere speculation.");[4] *see also,* Code of Judicial Conduct for U.S. Judges at Canon at Commentary to

---

severely impact by creating a knowingly false narrative built upon improper *ex parte* communications to "fix" a story line between Judge O'Grady and Attorney Grimm. Threatening to go to the U.S. Attorney in DC and bring criminal charges against Mr. Cherdak with the "blessing" of Judge O'Grady according to Attorney Grimm, see 112-case Dkt. 477-1 at pgs. 1-2, is clear extortion especially when Attorney Grimm earlier admitted to converting very valuable personal property from Mr. Cherdak. In Judge O'Grady's Order at 112-case Dkt. 498, Judge O'Grady strongly hinted and suggested to Attorney Grimm to prepare a factual rendition inconsistent with his already clear written text and email communications sent unsolicited to Mr. Cherdak. Judge O'Grady should stand well informed that further misconduct to distort the facts as they were already clearly written and memorialized in damning texts and emails by Attorney Grimm will work additional harm against Mr. Cherdak in that Mr. Cherdak could lose the ability to pursue both civil and criminal charges related to Attorney Grimm's extortion to collect debts not owed to Attorney Grimm in the first place and for which Attorney Grimm engaged in other acts of conversion in which he stole Mr. Cherdak's valuable personal property and acknowledged (in writing) to receiving and valuing the same.

[4] While the standards and strictures of 28 USC § 455(a), precedent (*e.g., Liteky, et al.*), the Code of Judicial Conduct for U.S. Judges all call for U.S. Judges to avoid both actual and apparent impropriety. The standard of the "reasonable

Canon 2A ("An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges, including harassment and other inappropriate workplace behavior. A judge must avoid all impropriety and appearance of impropriety."); *see also*, Code Canon 3(C)(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...). Judge O'Grady's willingness to create evidence and make out an affidavit, see 112-case Dkt. Nos. 477-1-2, 490-1, clearly demonstrates a personal animosity rising to the level of bias that should have led Judge O'Grady to recuse himself and to render no rulings in the 112-case. Those rulings being borne out of clear, negative bias and antagonism were extrajudicial and outside all jurisdictional predicates such that Judge O'Grady acted *ultra vires and to Plaintiff's* significant detriment and compensable harm. As Judge O'Grady has exhibited a robust self-interest to attempt to knock out Attorney Grimm's clear assertions and writings, Judge O'Grady must be stopped from further presiding over proceedings in the 112-case and from issuing any further orders that cause further harm to the Plaintiff.

9.     Plaintiff has presented, as identified and quoted *supra*, a mountain of clear and convincing evidence that was documented by an officer of this Court (Attorney Grimm) duty bound to tell the truth under applicable and implicated rules of professional ethics—nothing Plaintiff proffered in the 112-case to date is "speculative" and the false processes that Judge O'Grady has put Plaintiff

---

person" is omnipresent such as in relation to the fact that Judge O'Grady making out an affidavit concerning his views toward and against Plaintiff rendering Judge O'Grady a character witness are actual and apparent and reasonably give rise to reasonable questions as to Judge O'Grady's impartiality (or lack thereof). That said, and while Plaintiff does not seek to relitigate issues in the 112-case here, Plaintiff notes that Judge O'Grady rendered heinous accusations of evidence fabrication and otherwise that found no basis in fact. *See e.g.*, 112-case Dkt. 350 at 15, n.6. Plaintiff is not relying on those acts of clear misconduct to make out his claims herein. *See Liteky* (quoted herein, citation omitted).

through must now stop as Plaintiff is also entitled to significant compensation for harms caused as a result of Judge O'Grady's wrongful conduct proven by a mountain of documented, clear and convincing evidence.

10.    Judge O'Grady's other egregious approaches toward the documented, clear and convincing evidence showing *inter alia* that he has permitted his Chambers to be converted into a sort of legal aid clinic established to help Attorney Grimm and Judge O'Grady to "align" their stories, has been just as shocking as the evidence demonstrating such egregious misconduct. *Initially*, in response to clear and convincing evidence presented in Plaintiff's aforementioned Rule 60(b)(6) motion, Judge O'Grady wrote: "The Court does not know Mr. Grimm and has no recollection of having communicated with him." 112-case Dkt. 478 at 1. *Subsequently*, Judge O'Grady attempted to mischaracterize misconduct borne *inter alia* from improper *ex parte* communications about substantive motions and corresponding proposed substantive court orders to be filed by Attorney Grimm, as merely "routinized, administrative communications" so that Judge O'Grady could create a refuge in which to seek "cover" from documented misconduct that demonstrates no less than wrongful actions committed *ultra vires* and outside any genuine jurisdictional predicate and that clearly gives rise to reasonable questions as to Judge O'Grady's impartiality.[5] There is nothing

---

[5] Even if Judge O'Grady's position in his Order at 112-case Dkt. 511 were to hold water (and it does not and cannot under law), Canon 3(B)(2) of the Code of Judicial Conduct for U.S. Judges states: "A judge should not direct court personnel to engage in conduct on the judge's behalf or as the judge's representative when that conduct would contravene the Code if undertaken by the judge." If discovery reveals that Judge O'Grady expressly directed Ms. Wood to act on his behalf in working on substantive matters and in walking Attorney Grimm through a motions preparation process, any act by Judge O'Grady to direct Ms. Wood to so cooperate with Attorney Grimm would implicate a reasonable conclusion of misconduct under the Code of Judicial Conduct for U.S. Judges. See 112-case Dkt. 507-1 (Judge O'Grady doing nothing after Attorney Grimm wrote about his submissions of draft motions and proposed court orders to Ms. Wood and writing: "[If] I screwed up the motion please let me know."). Attorney Grimm clearly sought and obtained substantive review about establishing titles of his motions, about filing his motions, and about the entirety of the content of his motions that he did not "screw up" those motions. Attorney Grimm's email at 112-case Dkt. 507-1 clearly addressed Ms. Wood providing substantive comments about Attorney Grimm's motions and proposed orders in their entirety—Ms. Wood's input was comprehensive and directed substantive and editorial review of the substance of Attorney Grimm's two motions—ultimately finalized and filed days later by Attorney

routine or administrative about an officer of this Court (Attorney Grimm) seeking pre-filing

substantive review of substantive motions from a presiding judge and his chambers and his

personal law secretary under any lens—permitting that conduct in an ongoing investigation of that

conduct in this Court exacerbates already evidenced wrongful conduct on the part of Judge

O'Grady to being that of willful, intentional misconduct disregarding the rule of law, being outside

the bounds of any jurisdictional predicate, and demonstrating facts that a judge of this Court is

willing to permit heinous conduct to "fix" a pre-determined and self-serving outcome that violated

and that continues to violate Plaintiff's due process, equal protection and other rights to

fundamental fairness and access to a truly impartial decision maker in the 112-case.[6]

11.     The Chief Justice of the United States, his Honor Chief Justice John Roberts of the United

States Supreme Court, endorsed the Code of Pretrial and Trial Conduct (2009) (Amer. Col. Trl.

---

Grimm after Ms. Wood substantively assisted him and "walked him" through the entire process over the course of days and multiple improper *ex parte* communications.

[6] According to Canon 3(C)(1) of the Code of Conduct for Judicial Employees, "[a] judicial employee should take appropriate action upon receipt of reliable information indicating a likelihood of conduct contravening this Code. Appropriate action depends on the circumstances and may include, for example, reporting such conduct to a supervisor, court executive, or chief judge." Clearly, Ms. Wood did not take appropriate action when Attorney Grimm sought and received substantive assistance in the preparation of his substantive motions by sending the same to Ms. Wood for her substantive and editorial review and suggested revisions to the entirety of those motions. See also, Canon 2, Code of Judicial Conduct for Judicial Employees ("A judicial employee should not engage in any activities that would put into question the propriety of the judicial employee's conduct in carrying out the duties of the office. A judicial employee should not allow family, social, or other relationships to influence official conduct or judgment. A judicial employee should not lend the prestige of the office to advance or to appear to advance the private interests of others."); *see also,* Canon 3(F)(2)(b) ("A secretary to a judge, or a courtroom deputy or court reporter whose assignment with a particular judge is reasonably perceived as being comparable to a member of the judge's personal staff..."). As a member of Judge O'Grady's personal staff handling matters in Chambers, Ms. Wood engaged improper *ex parte* communications the knowledge of and about which were known to Judge O'Grady by at least notions of imputed knowledge, by way of imputation under notions of agency, and otherwise. If Judge O'Grady continues to insist that Ms. Wood's acknowledged conduct was merely administrative in nature, then Judge O'Grady is de facto asserting that he would find it appropriate to pre-review a litigants substantive draft motions prior to considering the same—that is not how the rules of procedure (civil and criminal are supposed to work—nor is a judge above the law). Indeed, even the Code of Conduct for Judicial Employees recognizes in Canon 3(F)(2)(b) that: "In the event the secretary, courtroom deputy, or court reporter possesses any of the foregoing characteristics and so advises the judge, the judge should also consider whether the Code of Conduct for United States Judges may require the judge to recuse." Judge O'Grady should have recused long ago and in all cases when Plaintiff urged a renewed motion to recuse at 112-case Dkt. 507.

Lawyers 2009) at pgs. 4- 5 which states in pertinent part: "A lawyer should never make any attempt to obtain an advantage through improper *ex parte* communication with a judge or the staff in the judge's chambers...A lawyer must make every effort to avoid such communication on any substantive matter ***and any matter that could reasonably be perceived as substantive***...") (emphasis supplied). Judge O'Grady knew and should have known that pre-filing review of draft versions of Attorney Grimm's two substantive motions several days before their official filing at 112-case Dkt. Nos. 505 and 506 were made in improper bi-directional *ex parte* communications with Judge O'Grady's chambers and Ms. Wood in particular, in ways that can only reasonably be described as substantive activity. *Id.* See 112-case Dkt. 507-1 (Attorney Grimm requesting Ms. Wood's substantive review of the entirety of Attorney Grimm's two draft motions and corresponding proposed court orders so that, according to Attorney Grimm, "If...I screwed up the motion please let me know."). Neither Chief Justice Roberts nor any judge in this Court would/should consider obtaining pre-filing review of substantive motions and substantive proposed orders to be anything less than activity "reasonably [to] be perceived as substantive." *Id.*

12.     Judge O'Grady will likely try to defend this action and Plaintiff's right to both equitable relief and significant damages on the ill-perceived notion that Judge O'Grady is somehow immune from liability for his wrongful and extrajudicial conduct undergirded by no genuine jurisdictional predicate of any kind. No such defense could be further from the truth and more disconnected from the rule of law governing immunity inquiries for judges. *See Stump v. Sparkman*, 435 U.S. 349 (1978). In addressing the metes and bounds of conduct constituting "judicial acts" worthy of review in an alleged immunity defense, the U.S. Supreme Court held "that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is

a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity…" Here, Judge O'Grady's wrongful actions are tantamount to being tortious in nature and are compensable because they are not functions normally performed by a judge (e.g., engaging in the preparation of evidence and the making out an affidavit to support parties in pursuing their own claims, criminal charges and investigations against a litigant standing before the judge in a collateral action—acts clearly revealing bias and extreme antagonism), and no litigant in any case contemplated in this lawsuit would ever expect a judge to make his chambers available for substantive pre-filing review and substantive editorial contribution to the finalization of substantive motions urged by one litigant over another in pending proceedings for adjudication by that same judge. Pre-filing substantive review of motions without inter-parties review is objectively wrong and constitutes material misconduct far outside any jurisdictional predicate. In the dissenting opinion in the *Stump* case, Justice Stewart, joined by Justices Marshall and Powell, concluded that what the judge did "was beyond the pale of anything that could sensibly be called a 'judicial act.'" *Id.* at 365. Here, the mountain of documented, clear and convincing evidence cited and quoted *supra* demonstrates egregious, repeated and patterned misconduct that is borne from improper *ex parte* communications, creation of evidence and the making out of affidavits by Judge O'Grady to be used by Attorney Grimm with Judge O'Grady's permission to advance Attorney Grimm's private claims, criminal complaints and investigations, and, ultimately, when in the midst of proceedings to address that misconduct as set up by Judge O'Grady to work solely in his favor, *see* Order at 112-case Dkt. 511, to allow additional improper *ex parte* communications concerning express requests for and receipt of substantive review of two substantive motions filed by Attorney Grimm seeking relief in substantive, proposed orders to be adjudicated by Judge O'Grady, demonstrates that nothing about such conduct is in anyway normal

-14-

and to be considered as properly done within the bounds of Judge O'Grady acting within any judicial capacity. [7]  *Id.*

13.    It is not normal for a judge to volunteer to create evidence and affidavits concerning a party's credibility to be used in collateral actions.  It is not normal to engage in *ex parte* communications directly or indirectly wherein a judge expresses his willingness to assist others with criminal investigations.  It is not normal for a judge to permit improper and private use of the prestige of his office and position in pursing private claims ever.  It not normal for a judge to acknowledge and permit improper substantive communications aimed at assisting a litigant to prepare substantive motions seeking substantive relief in substantive, proposed court orders.  Not a single statute or case was found providing any grounded jurisdictional predicate for such wrongful and egregious misconduct on the part of Judge O'Grady.  Nor was any case found recognizing any propriety of a lawyer like Attorney Grimm seeking and obtaining substantive assistance relative to substantive motions and a judge later falsely and self-servingly mischaracterizing such misconduct as proper under any circumstances.  Again, in endorsement of the Code of Pretrial and Trial Conduct (2009) (Amer. Col. Trl. Lawyers 2009) at pgs. 4-5 by Chief Justice Roberts, "[a] lawyer should never make any attempt to obtain an advantage through improper *ex parte* communication with a judge or the staff in the judge's chambers...A lawyer

---

[7] In *Joyner v. Farmer*, 1:16cv683 (LO/JFA), at *4 (E.D. Va. Nov. 8, 2016), Judge O'Grady recognized the principle that immunity flows only as to judicial acts – not those acts that are clearly extrajudicial acts (like converting his chambers into a de facto legal aid clinic to support corrupt alignment of factual allegations by and among Judge O'Grady and Attorney Grimm so as to get Judge O'Grady out of a hot mess in which Judge O'Grady is desperately seeking to avoid appearances of impropriety borne *inter alia* from improper *ex parte* communications, the insisted creation of fact evidence and an affidavit to assist Attorney Grimm in collateral matters and that related to Judge O'Grady's views toward Plaintiff and his credibility, the improper, yet permitted, use of the prestige of Judge O'Grady's office and position to advance the private interests of Judge O'Grady and Attorney Grimm, etc. In *Joyner*, Judge O'Grady wrote and recognized: "[i]t is well settled that judges are absolutely immune for suits for damages *arising out of their judicial acts*." (internal citations omitted and emphasis supplied). It is not the robe that converts non-judicial acts outside of any jurisdictional predicate into being "judicial acts;" but rather it is the acts of a fair and impartial jurist that warrant the entrusted wearing of that robe.

must make every effort to avoid such communication on any substantive matter *and any matter that could reasonably be perceived as substantive...*") (emphasis supplied). There is simply no way to describe the misconduct occurring in the 112-case that clearly leads to no less than reasonable inferences of bias, extreme antagonism, and other heinous and unfounded actions by Judge O'Grady as being acts reasonably perceived as being done in any judicial capacity. Judge O'Grady's repeated and patterned willingness to accept and/or mischaracterize improper ex parte communications as to Attorney Grimm's substantive motions can in no way be characterized as being done in any official or "judicial capacity" of any kind and are therefore nothing less than acts done ultra vires of any jurisdiction to hear matters in the 112-case under required predicates of due process, respect for the rule of law, and under notions of fundamental fairness and equity.

14.     Without jurisdiction to act so wrongly and offensively toward the rule of law and justice (and to Plaintiff's significant detriment and harm), Judge O'Grady violated his oath of his privileged office, denied Plaintiff and the public their rights to fair adjudication of matters within the bounds of procedural and substantive rules that should have worked to limit Judge O'Grady's *ultra vires* misconduct. And, because appearances of impropriety matter, the fact that Judge O'Grady has never called a "time-out," brought all interested litigants and related persons into open court for an evidentiary hearing with those litigants and related persons being placed under oath (as urged by Plaintiff on numerous occasions), the clear and convincing evidence authored without any input of the Plaintiff must guide any inquiries related to Judge O'Grady's misconduct to date. And, because Judge O'Grady's misconduct includes flagrant violations of canonical duties to examine presented evidence and controlling law and corresponding *de facto* admissions by Judge O'Grady to failing to examine that evidence, it is clear that Plaintiff will only be further harmed if Judge O'Grady's not immediately disqualified from presiding over any matters in the

-16-

112-case and brought before a jury who will decide the remedy and relief to be afforded to Plaintiff after a fair and impartial trial on the merits of this action.

## FIRST CAUSE OF ACTION

### A Claim in Equity Seeking Injunctive Relief
### To be Ordered by the Court to Prevent Judge O'Grady From
### Rendering Additional Orders in the 112-case

15.     Plaintiff incorporates all prior points, paragraphs and authorities as if restated herein in their entirety.

16.     Judge O'Grady has knowingly acted with bias and extreme antagonism toward Plaintiff in such ways and to such an enormous extent that any reasonable person would reasonably question and conclude that Judge O'Grady acted partially against Plaintiff in the 112-case.

17.     Judge O'Grady must be immediately recused and disqualified from further presiding over any proceedings involving the Plaintiff and, in particular, from presiding over any proceedings concerning Judge O'Grady's adjudications of any motions or other substantive matters in which Judge O'Grady has already demonstrated bias and a lack of impartiality that presented (and continues to present) a threat that Judge O'Grady will continue to act outside of any jurisdictional predicate and, instead, in accordance with his own corrupted and distorted views toward Plaintiff. Left without any governors on Judge O'Grady's free-exercise of continued, corrupted justice, Judge O'Grady will continue to distort law and fact to serve his own interests and in the interests of others so as to attempt to negate appearances and actual misconduct borne from bias and extreme and prejudicial antagonism toward and against Plaintiff—all while requiring Plaintiff to spend precious time and money preparing motions for preliminary injunctive relief, etc. Judge O'Grady will continue to allow improper *ex parte* communications concerning substantive matters and motions and proposed orders against Plaintiff, he will continue to allow others to improper use the

-17-

prestige of his office and position to assist those others in pursuing their own personal claims and urgings for criminal charges against the Plaintiff, he will continue to engage in disgusting insults and accusations of wrongful conduct completely made up by Judge O'Grady out of whole cloth and without a scintilla of evidence to support Judge O'Grady's career-ending and heinous insults and accusations, and he will continue to allow parties and litigants to use Judge O'Grady's chambers as a legal aid clinic providing pre-filing substantive review of substantive motions and proposed substantive orders that do nothing more than serve the interests of Judge O'Grady to Plaintiff's significant detriment and harm.

18.     Plaintiff is entitled to injunctive relief requiring Judge O'Grady to be removed and disqualified in any proceedings relating to and concerning Plaintiff as any future harms would be irreparable and, as such, they can and should be stopped now.

19.     There can be no question that the public is served by appropriate permanent injunctive relief to stop Judge O'Grady from further harming Plaintiff as the public has a vested interest in ensuring that corrupted judges and those who fail to abide by the rule of law and who clearly lack impartiality are not permitted to preside over cases in which such judges cannot administer fair and impartial justice. The balance of equities clearly tips in favor of equitable relief.

20.     Plaintiff will proceed in due course to present a motion seeking such contemplated injunctive relief (at least preliminarily) along with a proposed order that effects the ends of justice.

## SECOND CAUSE OF ACTION

### A Claim For Damages
### Under A Theory Of Strict Liability
### With Specific Prayers for Relief Sought

21.     Plaintiff incorporates all prior points, paragraphs and authorities as if restated herein in their entirety.

22.     Judge O'Grady has knowingly acted with bias and extreme antagonism toward Plaintiff in such ways and to such an enormous extent that any reasonable person would reasonably question and conclude that Judge O'Grady acted partially against Plaintiff in the 112-case.

23.     Judge O'Grady had an affirmative duty to remain impartial and he egregiously failed and breached that duty to the significant detriment and harm against the Plaintiff.

24.     Judge O'Grady misconduct as explained and set forth in this COMPLAINT clearly and proximately caused Plaintiff's harms not the least of which include being burdened with unjust damages and attorney fee awards against Plaintiff in an amount exceeding $1,300,000.00. That amount was a direct and proximate result of Judge O'Grady's deliberate acts and failures to honor his duties to administer fair and impartial justice whereby such failures derive from extrajudicial conduct including, but not limited to, documented improper *ex parte* communications clearly demonstrating extreme and unacceptable antagonism toward and against the Plaintiff. Judge O'Grady's conduct is not supported by any jurisdictional predicate of any kind and, as such, Judge O'Grady is not immune as his acts were not judicial acts done in the normal course of judicial proceedings and which were reasonably expected to occur under any lens.

25.     Plaintiff has additionally suffered significant pain and suffering, loss of consortium that has caused significant irreparable harm to be compensated in an amount to be determined at trial by a properly empaneled jury.

26.     Plaintiff has additionally suffered harm to his career and reputation intentionally and proximately caused by Judge O'Grady's lack of impartiality and his gross and egregious abuses of his power, and exhibitions of his negative biases and extreme and prejudicial antagonism toward and against Plaintiff in complete dereliction of Judge O'Grady's duties as a privileged jurist. Judge O'Grady levied career damaging and heinous accusations against Mr. Chedak in the 112-case that

find not a scintilla of support and evidence of any kind. These damages exceed more than $3,000,000.00 and continue to grow daily.

27.    Plaintiff is entitled to punitive damages to the fullest extent under Virginia law for Judge O'Grady's intentional acts to harm the Plaintiff and as a direct measure to punish Judge O'Grady and to send a strong message to the judiciary that judges are privileged jurists entrusted to do impartial justice and that intentional misconduct will not be tolerated to any extent.

## PRAYER FOR RELIEF

28.    Plaintiff respectfully asserts that he has set forth his prayers for relief in specific terms in his First and Second causes of action which are incorporated herein by reference. Plaintiff hereby further requests all due and proper remedies and relief as required to finally do justice.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury as to all claims and causes of action permitting trial by jury. Plaintiff understands that applications for equitable relief will be decided by a U.S. District Judge of this Court.

## OPENNESS TO MEDIATION THROUGH ALTERNATIVE DISPUTE RESOLUTION

Plaintiff hereby notifies the Court and Defendant Judge O'Grady that Plaintiff is willing to participate in a mediation before a neutral mediator (perhaps a magistrate judge in another division of this Court) should the Defendant share the view that early resolution through calm and deliberate proceedings would be best for the parties.

Respectfully submitted,

*Erik B. Cherdak*

Erik B. Cherdak

Date: Feb. 8, 2021
149 Thurgood Street
Gaithersburg, Maryland 20878
202.330.1994, ebcherdak@gmail.com