**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
*Alexandria Division*

| | | |
|---|---|---|
| **ERIK B. CHERDAK,** | * | |
|     **Plaintiff,** | * | |
| v. | * | Case No.: 21-cv-0141-PWG |
| **JUDGE LIAM O'GRADY** *et al.*, | * | |
|     **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**AMENDED[1] MEMORANDUM OPINION**

Plaintiff, Erik B. Cherdak, an attorney acting *pro se*, filed this lawsuit in February 2021 against the Honorable Liam O'Grady ("Judge O'Grady") seeking various relief including an injunction that would disqualify Judge O'Grady from presiding over any proceedings involving Mr. Cherdak as well as a claim for damages. Compl., ECF No. 1. Mr. Cherdak's allegations against Judge O'Grady relate to the case *Fitistics, LLC v. Cherdak*, No. 1:16cv112-LO-JFA (E.D. Va) (the "112 Case"), over which Judge O'Grady currently presides and in which Mr. Cherdak is a defendant. In his amended complaint, filed in June 2021, Mr. Cherdak added Judge O'Grady's personal Judicial Assistant, Diane Wood, as a defendant, as well as Bernard S. Grimm,[2] who represented Mr. Cherdak for a few months in 2017 in the 112 Case. Am Compl., ECF No. 41. On August 25, 2021, the Acting United States Attorney for the Eastern District of Virginia, filed a

---

[1]     Corrected the statement in the conclusion regarding the causes of action that remain pending against Bernard S. Grimm.
[2]     Although a summons was issued, ECF No. 59, it does not appear as if Bernard Grimm has been served. For clarity herein, I shall refer to Judge O'Grady and Ms. Wood collectively as the Federal Defendants. As previously noted in other filings in this case, Bernard Grimm has no relationship with the undersigned.

certification,[3] pursuant to 28 U.S.C. § 2679, that Judge O'Grady and Ms. Wood were acting within the scope of their employment with the federal government, and substituted the United States as Defendant with respect to the tort causes of action.[4] *See* Notice of Substitution, ECF No. 64, and accompanying Certification, ECF No. 64-1. Currently pending are Mr. Cherdak's motion to set aside the Westfall Act Certification, and the Federal Defendants' motion to dismiss on the basis of judicial immunity. Pl.'s Mot., ECF No. 77; Defs.' Mot, ECF No. 79. The motions are fully briefed,[5] and I find a hearing unnecessary. *See* Loc. Civ. R. 7 (J) (E.D. Va. 2020); Fed. R. Civ. P. 78. For the following reasons, Mr. Cherdak's motion to set aside the Westfall Act Certification is DENIED; and the Federal Defendants' motion to dismiss on the basis of judicial immunity is GRANTED.

## BACKGROUND

### I. Procedural Background

In the 112 Case, Fitistics, LLC ("Fitistics") filed suit against Mr. Cherdak in February 2016. *See* Case No. 1:16-cv-112-LO-JFA.[6] After a reassignment and a recusal, the case was assigned to Judge O'Grady in January 2018. *See id.* at ECF No. 272. After a bench trial and post-trial briefing, Judge O'Grady found in favor of Fitistics and against Mr. Cherdak on all the claims and counterclaims in the 112 Case. *See id.* at ECF No. 350. Mr. Cherdak proceeded to file multiple motions to vacate the judgment as well as a motion for Judge O'Grady's recusal, all of which were denied. *See id.* at ECF No. 425. In November 2019, the United States Court of Appeals for the

---

[3] Also referred to as a "Westfall Act Certification." *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 421-22 (1995).
[4] Excepting the Eighth Cause of Action, the "*Bivens* Constitutional Tort Claim" asserted against Judge O'Grady in his individual capacity. ECF No. 64; Am. Compl. ¶¶ 97-105.
[5] *See* ECF Nos. 77, 79, 80, 83, 84, and accompanying exhibits.
[6] Mr. Cherdak filed a counterclaim, and later filed a separate lawsuit against Fitistics, 1:17-cv-500, which was consolidated with the 112 Case.

2

Fourth Circuit affirmed the district court's judgment as well as several orders disposing of the parties' post-judgment motions. *See id.* at ECF Nos. 470-71. Mr. Cherdak then filed multiple additional motions to vacate judgment based on alleged judicial bias and for Judge O'Grady's recusal, which were denied. *See, e.g.*, *id.* at ECF No. 476 (moving to vacate judgment under Rule 60(b)(6) based on judicial bias); ECF No. 490 (emergency motion to suspend enforcement based on judicial bias); ECF No. 507 (emergency motion for Judge O'Grady to recuse/disqualify himself based on improper communications); ECF No. 536 (moving to set aside the Court's Judgment under Rule 60(d)(3)); ECF No. 544 (denying multiple motions). Mr. Cherdak filed multiple appeals related to the denials of his motions to vacate and recuse, but the appeals were dismissed for failure to prosecute. *See Fitistics, LLC, et al. v. Cherdak*, No. 20-2070 (4th Cir.) (dismissed in February 2021 and again in April 2021); No. 21-1537 (4th Cir.) (dismissed in July 2021).

Mr. Cherdak commenced this lawsuit against Judge O'Grady on February 8, 2021. Compl., ECF No. 1. Judges in the Eastern District of Virginia recused themselves from presiding over the case due to conflicts of interest, and Chief Judge Gregory of the Fourth Circuit designated me to sit with the United States District Court for the Eastern District of Virginia in connection with this case, pursuant to 28 U.S.C. § 292(b). *See* ECF No. 5. Mr. Cherdak initially sought an emergency injunction that would require Judge O'Grady to recuse himself in the 112 Case. *See* ECF Nos. 18, 20. After a hearing by video conference, I denied Mr. Cherdak's request for preliminary and temporary injunctive relief in April 2021, noting that a writ of mandamus to the Fourth Circuit was an avenue of relief available to him. Mem. & Order, ECF No. 26. Mr. Cherdak filed a petition for a writ of mandamus, which was dismissed by the Fourth Circuit for failure to prosecute. *In re: Cherdak*, No. 21-1487 (4th Cir.) (dismissed June 2021).

3

Meanwhile, this case has proceeded with Mr. Cherdak filing his First Amended Complaint on June 7, 2021, ECF No. 41, the notice of substitution of the United States as Defendant for Judge O'Grady and Ms. Wood, ECF No. 64, and the subsequent briefing of Mr. Cherdak's pending motion to set aside the Westfall Act Certification, ECF No. 77, and the Federal Defendants' pending motion to dismiss, ECF No. 79.

**II.     First Amended Complaint Allegations**

Generally, Mr. Cherdak alleges that in the context of the 112 Case, Judge O'Grady and Ms. Wood, as a member of the Judge's staff, intentionally and maliciously engaged in improper *ex parte* communications with Mr. Grimm, which caused Mr. Cherdak significant harm and disgraced the judiciary. Am. Compl. ¶¶ 7-9, 12. Mr. Cherdak alleges that Judge O'Grady issued orders against him denying him due process, and Ms. Wood assisted Mr. Grimm, as a third-party, with substantive filings in the 112 Case. *Id.* As a result of the alleged wrongful actions, Mr. Cherdak alleges that his reputation has been harmed as well as his ability to generate revenue under his law license. *Id.* at ¶ 11. And more specifically, Mr. Cherdak alleges that while Judge O'Grady was presiding over the 112 Case, he and Ms. Wood created false evidence to assist Mr. Grimm in pursuing criminal proceedings against Mr. Cherdak in other jurisdictions, and they reviewed and edited substantive motions before Mr. Grimm filed them in the 112 Case. *Id.* at ¶¶ 14-20, 22.

From May 2017 to August 2017, before Judge O'Grady presided over the 112 Case, Mr. Grimm represented Mr. Cherdak as an attorney in the 112 Case. *See id.* at ¶¶ 23, 93; 112 Case ECF Nos. 169, 180. While making efforts to collect past due legal fees, Mr. Grimm returned papers and files to Mr. Cherdak, which allegedly included a draft unsigned affidavit that Mr. Grimm had apparently prepared for Judge O'Grady to sign for the purpose of endorsing a criminal investigation against Mr. Cherdak. Am. Compl. ¶ 23. Mr. Grimm allegedly told Mr. Cherdak that

4

there was also a signed version of the affidavit from Judge O'Grady. *Id.* Mr. Cherdak alleges that once he learned about the improper communications, the Defendants then acted in concert to "cover-up" the earlier wrongful conduct, including filing documents in the 112 Case. *Id.* at ¶¶ 25-30. Further, Mr. Cherdak complains about Judge O'Grady's continued refusal to recuse himself from the 112 Case. *Id.* at ¶ 105.

To support his allegations, Mr. Cherdak attached the following exhibits:

- Ex. 1 – January 5, 2021 email from Mr. Grimm with an attachment entitled "Motion to Intervene," and a January 7, 2021 email that included a January 2, 2021 email from Mr. Grimm to Ms. Wood.

- Ex. 2 – an Order entered in the 112 Case (ECF No. 544) that discusses Mr. Cherdak's allegations of improper communications, including the Ex. 1 email, and denies Mr. Cherdak's motion for recusal.

- Ex. 3 – an Order entered in the 112 Case (ECF No. 511) that discusses Mr. Cherdak's allegations of improper communications, including the Ex. 1 email, and denies Mr. Cherdak's motion for recusal.

- Ex. 4 – the January 7, 2021 email from Ex. 1 that included a January 2, 2021 email from Mr. Grimm to Ms. Wood.

- Ex. 5 – a January 5, 2021 email from Mr. Grimm to Mr. Cherdak and Mr. McKirdy (Fitistics) with a PDF attachment, stating: "Attached is my Motion to Intervene. The previous motion had factual erors[sic] and sytax [sic] issues."

- Ex. 6 – duplicate of Ex. 2 (Order, ECF No. 544 in the 112 Case).

- Ex. 7 – a December 17, 2019 email from Mr. Grimm to Mr. Cherdak relating to unpaid legal fees and referencing "an affidavit not only O Grady, but past lawyers you have failed to pay [sic]." (as filed in the 112 Case (ECF No. 490-1)).

- Ex. 8 – a document identified as Exhibit 1, purporting to be text messages from Mr. Grimm to Mr. Cherdak. The August 28, 2020 at 2:11 a.m. message includes this statement: "It was difficult but Judge O Grady is willing to write a letter and cooperate with the criminal investigation." The November 19, 2019 at 1:54 p.m. message includes this statement: "I also obtained Judge Liam I [sic] Grady's comments about your credibility." The exhibit also contains what appears to be a text message from Mr. Cherdak to Mr. Grimm on November 2, 2020 at 11:26 a.m., with a file attachment named "Letter to Bernie Settlement Demand 11012020 EBC PDF" stating: "I must hear from you immediately regarding the

5

affidavit you obtained from Judge O'Grady." This was followed by a text message on November 20, 2020 at 11:15 a.m. with a file attachment referred to as a copy of "my informal opening brief" in which Mr. Cherdak states: "You may want to respond to me to provide me a copy of the affidavit you received from Judge O'Grady."

- Ex. 9 – a November 8, 2017 email from Mr. Grimm to Mr. Cherdak, containing threatening language about collecting the money owed. There is no reference to Judge O'Grady or Ms. Wood.

- Ex. 10 – a document entitled "Draft Affidavit" purporting to be a declaration by Judge O'Grady (unsigned), followed by what appears to be an excerpt from an unknown deposition and some legal notes regarding "crime-fraud exception."

- Ex. 11 – a June 18, 2020 email from Mr. Grimm to Mr. Cherdak, regarding making multiple calls about being owed "in excess of $88,000." There is no reference to Judge O'Grady or Ms. Wood.

- Ex. 12 – a December 20, 2019 email from Mr. Grimm to Mr. Cherdak regarding invoices with attachments. It includes a statement in upper case: "IF I DON'T HERE [sic] FROM YOU I WILL SEND IT TO THE VIRGINA [sic] BAR, [address] AND YOUR EMPLOYER, ALONG WITH JUDGE O GRADYS. COMMENTS."

- Ex. 13 – a copy of the Motion to Intervene as Amicus Curiae, as filed by Mr. Grimm in the 112 Case (ECF No. 505). In it, Mr. Grimm seeks to address "misstatements" by Mr. Cherdak. He states that he has not contacted the Court, and his phone reveals no text messages sent to Mr. Cherdak on August 28, 2020 or November 19, 2019.

- Ex. 14 – the January 5, 2021 email from Ex. 1, not including any other emails.

- Ex. 15 – a duplicate of Ex. 14 (the January 5, 2021 email from Ex. 1).

- Ex. 16 – a duplicate of Ex. 5 (January 5, 2021 email from Mr. Grimm).

- Ex. 17 – a document entitled "Intervener's Motion as Amicus Curiae to Correct Defendants Mistatements [sic] and Distortion of Defendants Exhibits Cited Herein." It has the 112 Case caption but appears not to have been filed. It appears to be an early draft of the document in Ex. 13.

- Ex. 18 – a March 24, 2017 email from Detective Brendon LaChance to Mr. Cherdak regarding "Newington Police Investigation 1600004528." It references a complaint of larceny for the theft of intellectual property (patents) from Fitistics.

- Ex. 19 – a document that appears to be a screen capture of text messages (SMS). The date is unreadable. There is no reference to Judge O'Grady or Ms. Wood.

6

- Ex. 20 – a duplicate of Ex. 12 (December 20, 2019 email from Mr. Grimm).

- Ex. 21 – a copy of a September 10, 2020 Order in the 112 Case (no reference to the docket number) denying Mr. Cherdak's motion to vacate judgment on the basis of bias, referencing an August 28, 2020 text message from Mr. Grimm to Mr. Cherdak, in which the Court states that it does not know Mr. Grimm or have any recollection of having communicated with him. The exhibit also includes pages 2-6 of ECF No. 505 in the 112 Case (Ex. 13 contains the full document).

Mr. Cherdak asserts six causes of action against the Federal Defendants.[7] They are:

- First Cause of Action – A Claim in Equity Seeking Injunctive Relief

- Second[8] Cause of Action – Violation of Virginia's Business Conspiracy Statute

- Fourth Cause of Action – Business Conspiracy at Virginia Common Law

- Sixth Cause of Action – Breach of Fiduciary Duty Also Including Tortious Interference with Contractual Relations

- Seventh Cause of Action – Aiding and Abetting Breach of Fiduciary Duty and Other Wrongs

- Eighth Cause of Action – A *Bivens*[9] Constitutional Tort Claim Pleaded in the Alternative (asserted against only Judge O'Grady)

Am. Compl. Mr. Cherdak contends that his claims against the Federal Defendants are intentional torts and violations of state law and not the type of claims "that can be certified away in a Westfall context." Pl.'s Mot. 14, 17.

---

[7] The Fifth Cause of Action (Conversion and Theft of Property) appears to be asserted against only Mr. Grimm, related to a Rolex watch. Am. Compl. ¶¶ 75-83. The Ninth Cause of Action (Defamation Per Se) is asserted against only Mr. Grimm. *Id.* at ¶¶ 106-114.

[8] Mr. Cherdak explained that his amended complaint contains a typographical and numbering error that identifies this claim as both his second and third cause of action. There is no third cause of action. Pl.'s Mot. 9 n.4.

[9] *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

7

**STANDARD OF REVIEW**

I. **Westfall Act Certification**

My analysis of the motions filed in this case begins with an evaluation of the Westfall Act[10] certification seeking to substitute the United States for Judge O'Grady and Ms. Wood.[11] *See Emami v. Bolden*, 175 F. Supp. 3d 616, 619 (E.D. Va. 2016) ("In order to have standing to file the Motion, the United States must be a party to this case."). Under the Westfall Act, substitution by the United States occurs "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). There are two exceptions: (1) a *Bivens* suit alleging a violation of the Constitution by a Government employee, and (2) suits alleging a violation of a federal statute that authorizes recovery against a Government employee. *United States v. Smith*, 499 U.S. 160, 167 (1991) (citing 28 U.S.C. § 2679(b)(2)).

"Where the Westfall Act applies, a cause of action is transformed into one pursuant to the Federal Tort Claims Act ("FTCA")." *Ameur v. Gates*, 950 F. Supp. 2d 905, 914 (E.D. Va. 2013). The federal employee is dismissed and the action proceeds against the United States. *Osborn v. Haley*, 549 U.S. 225, 230 (2007).[12] The Attorney General's certification regarding an employee's scope of employment is conclusive unless challenged and is considered *prima facie* evidence of

---

[10] "The Federal Employees Liability Reform and Tort Compensation Act of 1988[ is] commonly known as the Westfall Act." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The Westfall Act was enacted in response to *Westfall v. Erwin*, 484 U.S. 292 (1988). *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1152 (4th Cir. 1997).

[11] I note Defendants' assertion that if I strike the substitution, the dismissal motion is submitted on behalf of Judge O'Grady and Defendant Diane Wood, in her individual capacity, as to the state-law tort claims. Defs.' Mot. 1 n.1.

[12] The employee's immunity "is an *immunity from suit* rather than a mere defense to liability." *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1154 (4th Cir. 1997) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

the issue. *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153-54 (4th Cir. 1997) (citations omitted); *see also Osborn*, 549 U.S. at 252 ("Upon certification, the action is 'deemed to be . . . brought against the United States,' [§ 2679(d)(1)-(3)], unless and until the district court determines that the federal officer originally named as defendant was acting outside the scope of his employment.").

A plaintiff challenging the certification must prove by a preponderance of the evidence that the defendant was not acting within the scope of employment. *Gutierrez*, 111 F.3d at 1153-54. To do so, "the plaintiff must submit 'specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation.'" *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000) (quoting *Gutierrez*, 111 F.3d at 1155). The burden then shifts back to the United States to "provide evidence and analysis to support its conclusion that the torts occurred within the scope of employment." *Id.* (quoting *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997)).

Whether the Government's scope of employment certification is correct is a question of law for the court to decide. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995); *Gutierrez*, 111 F.3d at 1152. The court weighs the sufficiency of the evidence and resolves any genuine factual issues. *Borneman*, 213 F.3d at 827. To determine if the federal employee was acting within the scope of employment, the court must apply the law of the state in which the alleged wrongful act occurred. *Id.* (citing *Maron*, 126 F.3d at 323-24). If needed, the court has the discretion to allow limited discovery and hold an evidentiary hearing, while remaining "cognizant of the considerations weighing against protracted litigation under the Westfall Act." *Gutierrez*, 111 F.3d at 1155.

9

## II.     Dismissal Motion

The United States and the Federal Defendants have moved for dismissal based on judicial immunity. Defs.' Mot. 1. Courts generally analyze judicial immunity under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *King v. Myer*s, 973 F.2d 354, 355 (4th Cir. 1992) (affirming the dismissal of a complaint on the grounds of judicial immunity under Rule 12(b)(6)); *Skillings v. Knott*, 251 F. Supp. 3d 998, 1003 (E.D. Va. 2017) (analyzing the assertion of judicial immunity under Rule 12(b)(6)).[13] This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

---

[13]     The parties agree on the dismissal standard. Defs.' Mot. Mem. 32 n.18; Pl.'s Reply 8-9. Courts also consider arguments of judicial immunity under Rule 12(b)(1) motions to dismiss. *See, e.g.*, *Chien v. Motz*, Civil No. 3:18-cv-106 (MHL), 2019 WL 346761, at *6 (E.D. Va. 2019) (citing cases). Regardless, when a defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting a challenge that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . . the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

"In ruling on a motion to dismiss, a court may also 'consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Lawhon v. Edwards*, 477 F. Supp. 3d 428, 436 (E.D. Va. 2020) (quoting *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019)); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," such as an immunity defense. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).

## ANALYSIS

### I.  Westfall Act Certification

Mr. Cherdak challenges the United States' substitution under the Westfall Act. Pl.'s Mot. 1. First, Mr. Cherdak argues that the Westfall Act does not contemplate intentional torts such as he has pleaded in his amended complaint. *Id.* at 3-14; 17-32. Second, Mr. Cherdak argues that the Federal Defendants' actions were outside the scope of their employment. *Id.* at 14-17; 33-45.

11

### A.  Westfall Act Exceptions

Under the Westfall Act, there are two exceptions to substitution: (1) a *Bivens* suit alleging a violation of the Constitution by a Government employee, and (2) suits alleging a violation of a federal statute that authorizes recovery against a Government employee. *United States v. Smith*, 499 U.S. 160, 167 (1991) (citing 28 U.S.C. § 2679(b)(2)).  The first Westfall Act exception applies in this case to Mr. Cherdak's eighth cause of action— the *Bivens* constitutional claim asserted against Judge O'Grady.  The Government agrees that the Westfall Act certification does not apply to the *Bivens* claim.  Defs.' Mot. Mem. 14 n.12, ECF No. 80.

The second Westfall Act exception is for civil actions "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." § 2679 (b)(2)(B).  This exception does not apply because none of Mr. Cherdak's claims allege a violation of a statute authorizing an action against an individual.  And the Westfall Act is not limited to negligence-based common-law tort claims as Mr. Cherdak argues, but also includes intentional torts.  *See Maron*, 126 F.3d at 326 ("[W]e hold that the [Westfall Act] does not preclude substitution in cases of intentional torts, regardless of the governing state law."); 28 U.S.C. 2679(b)(1) (referring to the exclusive remedy for "injury or loss of property, or personal injury or death arising or resulting from the negligent *or wrongful act or omission* of any employee of the Government while acting within the scope of his office or employment" (emphasis added)).

Therefore, the remainder of Mr. Cherdak's causes of action against the Federal Defendants are subject to scope-of-employment certification.

### B.  Scope of Employment

State law governs this analysis, and the parties agree that the alleged acts occurred in Virginia, which means that I must apply Virginia law.  Pl.'s Mot. 12, 14; Defs.' Mot. Mem. 24.

Under Virginia law's broad view of scope of employment, an employee's act lies within the scope of employment if:

> (1) it [is] something fairly and naturally incident to the business, and (2) if it [is] done while the servant was engaged upon the master's business and [is] done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

*Emami v. Bolden*, 175 F. Supp. 3d 616, 620 (E.D. Va. 2016) (quoting *Sayles v. Piccadilly Cafeterias, Inc.*, 410 S.E.2d 632, 634 (Va. 1991)); *see also Gutierrez*, 111 F.3d at 1156 (citing cases demonstrating that Virginia takes a fairly broad view of scope of employment and noting that "even intentional torts may be within the scope of employment").

Mr. Cherdak asserts that both Judge O'Grady and Ms. Wood "acted *ultra vires* relative to their respective scopes of employment" because their actions were circumscribed by canons of conduct. Pl.'s Mot. 33-36. As evidence, Mr. Cherdak relies on the following:

- Am. Compl. Ex. 4 – January 2, 2021 email from Mr. Grimm to Ms. Wood
- Am. Compl. Ex. 10 – an unsigned document entitled "Draft Affidavit"
- Am. Compl. Ex. 7 – December 17, 2019 email from Mr. Grimm to Mr. Cherdak
- Am. Compl. Ex. 1 – January 5, 2021 email from Mr. Grimm with an attachment entitled "Motion to Intervene"
- Am. Compl. Ex. 8 – text messages from Mr. Grimm to Mr. Cherdak

*Id.* at 36-38. He adds that metadata from the "Motion to Intervene" Microsoft Word document, Am. Compl. Ex. 1, specifies "Chambers USDJ Liam O'Grady E.D. Va." as the author, which demonstrates the link connecting Mr. Grimm with Judge O'Grady and his chambers. *Id.* at 39-40. And Mr. Cherdak notes the dates on some of the emails, which indicates that the conduct was

13

occurring on weekends and federal holidays when the courthouse was closed, and therefore, not "within the ordinary course of the business of the courts." *Id.* at 43.

In response, the Government contends that none of Mr. Cherdak's exhibits present evidence of acts by Judge O'Grady or Ms. Wood, but only acts and statements of Mr. Grimm. Defs.' Mot. Mem. 25-29 (describing emails from Mr. Grimm, but not Ms. Wood, and a draft affidavit prepared by Mr. Grimm but not Judge O'Grady and not signed). The Government argues that the statements in the emails are not admissible evidence, and Mr. Cherdak's interpretations regarding the statements are speculation. *Id.* at 26-27. Further, the Government notes that the alleged actions are within the scope of employment since they occurred while engaged in the business of the court. *Id.* at 27-28. Regardless, the Government rebuts Mr. Cherdak's purported evidence by filing declarations pursuant to 28 U.S.C. § 1746. *Id.* at 29-30; Exs A, B, ECF Nos. 80-1, 80-2.[14] Both Federal Defendants declare that they had never seen the document entitled "Draft Affidavit" until it was filed as an exhibit in this lawsuit, nor did they draft, author, prepare, or otherwise create any affidavit or document concerning Mr. Cherdak to be used by Mr. Grimm or anyone else. *Id.*

Importantly, Mr. Cherdak primarily argues that the alleged actions are not within the scope of employment because they are wrongful acts that violate a code of conduct. However, the inquiry of whether an employee acts within the scope of employment is not whether the conduct in

---

[14] Mr. Cherdak contends that the declarations are defective because they do not contain the requisite language to qualify as "unsworn declarations under penalty of perjury." Pl.'s Reply 3 (quoting *Jarvis v. Enterprise Fleet Svcs. & Leasing Co.*, Civil Action No. DKC 07-3385, 2010 WL 1068146, at *15 (D. Md. May 11, 2010). 28 U.S.C. § 1746 requires "substantially the following form: . . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." The Federal Defendants' declarations substantially comply with the required language based on personal knowledge. They do not represent an attorney's declaration based on information and belief as Mr. Cherdak described. Pl.'s Reply 3 (citing *Minnesota Mining Mfg. Co. v. United States Rubber Co.*, 279 F.2d 409, 415 (4th Cir. 1960)).

14

question was wrongful, nor is the employee's motivation an essential element, but rather it "focus[es] chiefly on whether the tortious or intentional wrongful conduct was sufficiently related in time, place, and causation to the employee's duties to be attributable to the employer's business." *Gulf Underwriters Ins. Co. v. KSI Servs., Inc.*, 416 F. Supp. 2d 417, 421 (E.D. Va. 2006). Even an outrageous act that violates an employer's rules may be within the scope of employment. *See Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 453 S.E.2d 261, 266 (Va. 1995) (holding that "willful and malicious acts" that were "outrageous and violative of [the] employer's rules" might nonetheless be within the scope of employment). Mr. Cherdak describes actions that he believes were taken by Judge O'Grady and Ms. Wood based on his interpretation of Mr. Grimm's emails and messages.[15] All of these alleged acts were in the context of the 112 Case, over which Judge O'Grady was presiding. Even if, for the sake of argument, I accept that there were improper communications, they occurred within the context of Judge O'Grady's and his chambers' staff's management of the case, and thus, the alleged acts were within the scope of employment.

Under these circumstances, I find that the Westfall Act certification that Judge O'Grady and Ms. Woods were acting within the scope of employment is proper, and the United States is the proper defendant on Mr. Cherdak's non-constitutional claims against them, i.e., the first, second, fourth, sixth, and seventh causes of action. Given the broad definition of scope of employment under Virginia law, no genuine dispute of material fact exists on whether the alleged

---

[15] I note that in the 112 Case, Mr. Grimm sought to correct Mr. Cherdak's "misstatements and distortion" of these same communications, stating that he had never met Judge O'Grady, nor had he ever communicated with Judge O'Grady, and he represented that the purported text messages did not exist. Am. Compl. Exs. 1-3; *see also* ECF No. 506 in the 112 Case. Mr. Grimm also represented that his references to Judge O'Grady in the email exhibits had been misinterpreted by Mr. Cherdak. *Id.*

15

conduct is encompassed within the Federal Defendants' scope of employment. I do not find it necessary to order limited discovery nor hold an evidentiary hearing to reach this conclusion. Indeed, earlier in this case, Mr. Cherdak sought to file a summary judgment motion, stating: "Judge O'Grady's egregious extrajudicial misconduct is documented in written evidence already in the public record and cannot be disputed and, frankly, no expensive, time-consuming discovery processes can lead to different material facts from those stated in plain and clear language in writings already authenticated and in the record . . . ." Ltr. Mar. 8, 2021, ECF No. 12. Given my finding that the acts as alleged are within the scope of employment, continuing to pursue this matter with discovery would merely cause unnecessary, inefficient, and expensive delay in the progress of this case.

## II.    Judicial Immunity

Judicial immunity protects judges from any suit for damages based on judicial acts taken within their jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 9-11 (1991) (per curiam); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985); *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008). This immunity extends to judicial assistants. *See, e.g.*, *Skillings v. Knott*, 251 F. Supp. 3d 998, 1004-05 (E.D. Va. 2017) ("Immunity applies to all acts of auxiliary court personnel that are 'basic and integral part[s] of the judicial function' unless those acts are done in the clear absence of all jurisdiction." (quoting *Mullis v. U.S. Bankr. Ct. Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987))); *Shelters v. First Jud. Cir. Ct.*, No. 3:20cv5261-MCR-HTC, 2020 WL 4721836, at *3 (N.D. Fla. Jun. 23, 2020) ("[J]udicial immunity extends not only to judges, but to other persons whose 'official duties have an integral relationship with the judicial process.'" (quoting *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)). Judicial immunity is an absolute immunity that protects a defendant not just

from assessment of damages, but also from damages suits entirely. *Mireles*, 502 U.S. at 11; *In re Mills*, 287 F. App'x at 279.

Moreover, judicial immunity applies even when judicial authority is exercised improperly, even if the judge commits "grave procedural errors," or if the judicial acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 13 Wall. 335, 351 (1871)); *Mullins v. Oakley*, 437 F.3d 1217, 1218 (4th Cir. 1971). There are only two exceptions to this bar of absolute judicial immunity: (1) "for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citation omitted). A judge acts in a judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. "[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435 U.S. at 356. And "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.*

Neither exception applies in this case. As discussed above, the Federal Defendants were acting in the context of the 112 Case, over which the court had jurisdiction, and which was presided over by Judge O'Grady. Further, all of Mr. Cherdak's allegations relate to actions that Judge O'Grady and Ms. Wood took in their capacities as a judge and judicial assistant during the management of the 112 Case and in the process of resolving the claims and motions in that case. Even accepting, for argument's sake, as true the allegations against the Federal Defendants—they participated in *ex parte* communications; they were biased towards and conspired against Mr. Cherdak; they exceeded their authority; they assisted a third-party litigant in the case—immunity

17

still protects them. *See, e.g.*, *Stump*, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Forrester v. White*, 484 U.S. 219, 227 (1988) ("[T]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."); *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) ("We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges and prosecutors. As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies.").

Mr. Cherdak argues that he alleges conduct that is not "judicial conduct" because it "includes wrongful acts occurring outside any jurisdictional predicate." Pl.'s Reply 11, ECF No. 83. As an example, he describes Mr. Grimm preparing an affidavit for Judge O'Grady's signature and working with the clerk's office to prepare filings. *Id.* at 11-12. He also argues that the Federal Defendants "acted outside of business hours and on weekends over holiday periods." *Id.* at 12. And Mr. Cherdak compares the Federal Defendants' actions to an example of a judge causing a car accident that injures a litigant in one of the judge's cases as actions "in the clear absence of all jurisdiction." *Id.* at 14.

First, there is simply no merit to any contention that actions or communications that take place outside of the court's normal business hours somehow transforms those actions or communications to being non-judicial. If the determination of whether actions taken by United States Judges was confined to their occurrence within business hours and weekdays, the judicial system would grind to a complete halt in no time. And the complained-of acts at issue here are not so removed from the jurisdictional environment of the case as a car accident that happens to

18

involve a litigant. Rather, the complained-of acts were functions that are "normally performed by a judge," and they were taken in the context of the 112 Case in which the parties dealt with Judge O'Grady in his "judicial capacity." *King*, 973 F.2d at 357. Also, as recognized by the Government, Defs.' Reply 3-4, ECF No. 84, the allegations of Mr. Grimm's actions and communications are not inherited by the Federal Defendants, notwithstanding Mr. Cherdak's speculation and unwarranted inferences. Speculation, unwarranted inferences, and conclusory statements are insufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678.

Because the Federal Defendants did not perform any non-judicial act that was in the clear absence of all jurisdiction, I shall grant the motion to dismiss, "mindful of the important purpose served by the doctrine of judicial immunity, which has been described as protecting the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" *King*, 973 F.2d at 359 (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

To be clear, this dismissal includes Mr. Cherdak's eighth cause of action, the *Bivens* constitutional claim asserted against only Judge O'Grady, and which was excepted from the Westfall Act certification. While I am ordering dismissal of the *Bivens* claim solely under the doctrine of judicial immunity, I note, but do not rule, that this claim may also constitute an improper extension of *Bivens* into a new context and a new category of defendants.[16] This is because in recent years, the Supreme Court has consistently refused to extend the *Bivens* remedy,

---

[16] Although Judge O'Grady raised this issue by pre-motion letter, ECF No. 66, briefing was deferred until after the ruling on the Westfall Act Certification challenge and judicial immunity issues. *See* Ltr. Order, Sep. 17, 2021, ECF No. 76. Although my dismissal of the *Bivens* claim is based solely on absolute judicial immunity, it is worth noting that the policy underlying the purpose of judicial immunity is particularly furthered by dismissal of this claim that, but for immunity, would expose a judicial officer to a cause of action that seems especially ill-favored under the circumstances of this case, given recent decisions restricting the scope of *Bivens* claims.

19

cautioning that any extension of *Bivens* is now highly disfavored. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *see also Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) ("The Court's most recent guidance on the continued availability of *Bivens* actions came in *Ziglar v. Abbasi*, where the Court expressed open hostility to expanding *Bivens* liability . . . .").

Accordingly, all causes of action asserted against the Federal Defendants shall be DISMISSED WITH PREJUDICE as barred by judicial immunity. Further, it has been over 200 days since the summons was issued as to Bernard S. Grimm on August 5, 2021, and there is no indication on the docket that he has been served. Plaintiff shall be given the opportunity to show cause why the case should not be dismissed as to Bernard Grimm for failure to prosecute. *See* Fed. R. Civ. P. 41(b); *see also Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019), *as amended* (June 10, 2019) (noting court's "'inherent power' to dismiss an action for want of prosecution" (quoting *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962))).

## CONCLUSION

For the foregoing reasons,

1. Plaintiff's Motion to Set Aside the Westfall Act Certification, ECF No. 77, is DENIED;
2. The Federal Defendants' Motion to Dismiss on the Basis of Judicial Immunity, ECF No. 79, is GRANTED;
3. The First, Second, Third, Fourth, Sixth, Seventh, and Eighth causes of action asserted against the Federal Defendants are DISMISSED WITH PREJUDICE. The causes of action asserted against Bernard S. Grimm remain pending.
4. Within FOURTEEN (14) DAYS from the entry date of this Order, i.e., on or before March 10, 2022, Plaintiff shall SHOW CAUSE why this case should not be dismissed as to the remaining Defendant, Bernard S. Grimm, without prejudice, pursuant to Fed. R. Civ. P. 41(b).
5. Judgment shall be entered by separate Order.

Dated: February 28, 2022.

/S/
Paul W. Grimm
United States District Judge